**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BELLA ZUZEL,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **CARDINAL HEALTH, INC., and** | : | **No. 19-268** |
| **RGH ENTERPRISES, INC.,** | : | |
| **Defendants.** | : | |
| | | |
| **CARDINAL HEALTH, INC., and** | : | |
| **RGH ENTERPRISES, INC.,** | : | |
| **Third-Party Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **AIKIN HOLDING CORP.,** | : | |
| **Third-Party Defendant.** | : | |

## <u>MEMORANDUM</u>

**Schiller, J.**                                                              **October 5, 2021**

Bella Zuzel was injured when her Cardinal Health rollator collapsed underneath her after the wheels became caught in the gap between the platform and the train on the Broad Street Line. She has sued Cardinal Health, Inc. ("Cardinal Health" or "Cardinal") and its indirect subsidiary, RGH Enterprises, Inc. ("RGH") for strict product liability, premised on a design defect and failure to warn, and breach of warranty. Cardinal Health filed a motion for summary judgment on the merits of these claims, and on the grounds that it is not the responsible party because RGH distributed the rollator. Cardinal Health also filed a motion *in limine* to exclude certain opinions of Plaintiff's expert Jonathan Z. Schuch pursuant to Federal Rules of Evidence 702-704 and 403. RGH joined Cardinal Health's pending motions after it was added as a Defendant. For the reasons set forth below, Cardinal Health and RGH's motion for summary judgment is granted in part and

1

denied in part. Their motion *in limine* is denied without prejudice to renew after Defendants depose Plaintiff's expert.

## I.    FACTUAL BACKGROUND

Zuzel has disabilities that limit her ability to walk without the use of a wheeled mobility device known as a rollator. Zuzel purchased a Cardinal Health-branded rollator with a curved back and seat from a seller on eBay in October 2015. (*See* Defs.' Ex. C, Deposition of Bella Zuzel [Defs.' Zuzel Tr.] 122:7-13; *see also* Defs.' Exs. B, E.) Zuzel's rollator was the Cardinal Health rollator model number ZCHMT25BG. (*See* Defs.' Exs. B, E-H.) Zuzel selected the rollator based on price. (Defs.' Zuzel Tr. 129:2-14.) She did not speak to anyone about what rollator to purchase, and she did not tell anyone at Cardinal Health or RGH that she intended to use the rollator on public transportation. (*Id.* 129:15-17, 182:4-14.) Zuzel did not see any marketing materials for the rollator other than the eBay listing. (*Id.* 132:9-133:14.) The rollator arrived with a diagram showing how to assemble it but no other instructions for use were included with the product when Zuzel received it. (*Id.* 146:9-147:5.)

### A.  The Broad Street Line Incident

On November 25, 2016, Zuzel was injured while exiting a Broad Street Line car using her Cardinal Health-branded rollator. When she exited the train at the Cecil B. Moore Subway Station, the front wheels of her rollator became lodged in the gap between the subway car and the platform. (Pl.'s Ex. A [Pl.'s Zuzel Tr.] 60:8-61:5.) When Zuzel tried to dislodge the rollator, it "collapsed" underneath her. (*Id.* 59:3-9, 60:8-16, 64:14-22; Defs.' Zuzel Tr. 150:5-21.) Zuzel then fell, fracturing her right knee. (Pl.'s Zuzel Tr. 59:3-12.)

Prior to this incident, Zuzel frequently took the Broad Street Line. (Defs.' Zuzel Tr. 114:9-11.) She was familiar with the Cecil B. Moore Subway Station because it was a station that she

typically and ordinarily used. (*Id.* 98:4-19.) According to Zuzel, when she boarded or exited a subway car with her rollator, she would sometimes lift the rollator up to cross the gap, depending on whether the car was lined up with the platform. (*Id.* 55:15-22.) When exiting the train, Zuzel typically would not wheel her rollator into the gap if the platform was higher than the level of the train was because the rollator might get stuck. (*Id.* 153:10-17; *see id.* 170:8-171:10.) When she exited the Broad Street Line subway car on the day of the incident, Zuzel rolled her rollator into the gap between the platform and the train because the platform was not higher than the car. (*Id.* 171:11-172:1.)

### B. Procedural History

In November 2018, Zuzel sued Cardinal Health, Southeastern Pennsylvania Transportation Authority, Inc. ("SEPTA"), and Medline Industries, Inc. in the Philadelphia Court of Common Pleas. SEPTA removed the case to this Court. Plaintiff recently voluntarily dismissed her claims against SEPTA with prejudice. In addition to the incident described above, the complaint included allegations about two other incidents not involving Cardinal Health. The Court severed and remanded Zuzel's claims against Medline and dismissed the claims against Cardinal Health without prejudice.

Plaintiff filed an amended complaint in May 2019, which asserted claims against Cardinal Health for: (1) strict product liability for failure to warn; (2) strict product liability for defective design and manufacture; and (3) breach of both express and implied warranties. The Court dismissed Zuzel's manufacturing defect and breach of express warranty claims against Cardinal Health for failure to state a claim. In August 2019, Cardinal Health answered the amended complaint; it denied it was the distributor of the rollator and stated "its subsidiary or affiliate distributed and sold the rollator." (Document No. 28 ¶ 3.) In October 2019, following a Rule 16

conference, the Court issued a Scheduling Order, which was revised in April 2020 to close discovery at the end of September 2020. In October 2020, after discovery closed, Cardinal Health filed a consent motion for leave to file a Third-Party Complaint against the alleged manufacturer of Zuzel's rollator, Aikin Holding Corp. The Third-Party Complaint names RGH as a Plaintiff and describes RGH as "an indirect subsidiary of Cardinal Health, Inc." (Document No. 44 ¶ 2.)

Pursuant to the Court's revised Scheduling Order, Cardinal Health filed a motion for summary judgment on Plaintiff's claims. After filing its motion for summary judgment, Cardinal Health separately filed a motion *in limine* to exclude many of Plaintiff's expert opinions. While those motions were pending, the Court granted Plaintiff leave to amend her complaint to add RGH as a Defendant. RGH retained the same counsel as Cardinal Health and joined all of Cardinal Health's pending motions by consent stipulation with Plaintiff.

### C.  The Agreement to Manufacture and Distribute Plaintiff's Rollator

The Third-Party Complaint alleges that "RGH contracted with Aikin to distribute the rollator" that Plaintiff was using when she fell. (Document No. 44 ¶ 4.) The Third-Party Complaint refers "collectively" to Cardinal Health, Inc. and RGH as "Cardinal Health." (*Id.* at 1.) It further alleges that "Cardinal Health, Inc. entered into a Private Label Agreement ('the Agreement') with Aikin through its indirect subsidiary, RGH. Under the terms of the Agreement, Cardinal Health agreed to distribute Aikin products under the Cardinal Health label." (*Id.* ¶ 10 (footnote omitted).) The Private Label Agreement—which is attached to the motion for leave to file the Third-Party Complaint as Exhibit B—includes a "Supplier Quality Agreement" that references "Cardinal Health" throughout, but "Cardinal Health" is not a defined term in the Agreement. (Document No. 42-1 at Ex. B at 22-27; *accord* Pl.'s Ex. D.)

4

### D. Plaintiff's Proposed Expert Testimony

Plaintiff presents the opinions of proposed expert witness Jonathon Z. Schuch, M.Eng., P.E. (Pl.'s Ex. B [Schuch Rep.].) Schuch is a registered professional engineer in Virginia and holds a Master of Engineering degree in Biomedical Engineering. (*Id.* at 27.) He currently serves as the Director of Occupational Health and Wellness for the University of Virginia Health System. (*Id.* at 33.) Schuch has been an educator in rehabilitation engineering and assistive technology throughout his career, including serving as the Co-Director of the University of Virginia's Rehabilitation Technology Training Program. (*Id.* at 26.) He has published peer-reviewed articles concerning seating and wheeled mobility and has served as an Assistant Professor of Medical Education in Physical Medicine and Rehabilitation, focusing on assistive technologies and their usage. (*Id.* at 27, 35.) He has worked with numerous patients who use rollators. (*Id.* at 26.)

Schuch's Report offered expert opinions supporting Plaintiff's claims against Cardinal Health and SEPTA. (*Id.* at 1-2.) Among other things, he reviewed deposition transcripts, interrogatory responses, documents produced in this case, and "[p]hotographs of the Cardinal Health Rollator." (*Id*. at 3.) He also reviewed "scientific literature related to the use of rollators, [and] the applicable [International] ISO standard pertaining to rollators." (*Id.* at 14.) Schuch offers the following opinions pertaining to Plaintiff's claims against Cardinal Health and RGH:

1. Ms. Zuzel was using the incident Cardinal Health rollator for its intended purpose. Specifically, Ms. Zuzel was using the rollator to assist her in ambulation.
2. Ambulation in one's community while using a rollator, which may include accessing public transportation services, is a foreseeable, if not intended, use of a rollator.
3. Per International (ISO) Standard 11199-2:2005, rollators are not supposed to unintentionally fold or collapse when in the use or working position. Rather, the folding mechanism must stay securely locked to prevent unintentional folding of the rollator.
4. Per ISO Standard 11199-2:2005, rollators used in outdoor environments must have front wheels with a diameter that is greater than 7 inches (180 mm).

5. Per long-standing and well-accepted practices, instructions for the use of a medical device and warnings associated with the intended and foreseeable uses of the medical device should accompany the device when distributed and/or sold.

6. The incident Cardinal Health rollator is defectively designed in that it can unintentionally collapse while in the working or use position. Further, because there is no documentation instructing a user to limit its use to indoor environments, the incident rollator is defectively designed for outdoor use. This is due to the fact that the front wheels are less than 7 inches (180 mm) in diameter.

7. The documentation provided with the incident rollator is devoid of meaningful instructions for use and warnings pertaining to outdoor use, use across uneven terrain (including vertical changes in height), and use across gaps found in built environments. Thus, Cardinal Health failed to warn Ms. Zuzel of the risks and dangers associated with using the incident rollator outdoors and in built environments possessing uneven terrain and gaps that could entrap the rollator. . . .

11. As a result of . . . the design defects in the Cardinal Health rollator, and the lack of warnings, Ms. Zuzel attempted to exit a middle car on the SEPTA Broad Street Line at the Cecil B. Moore Station while using her rollator. The front wheels of the rollator fell into the gap between the subway car and the station platform and became entrapped. The rollator collapsed as Ms. Zuzel was attempting to dislodge the front wheels from the gap, causing Ms. Zuzel to fall and fracture her right patella.

(*Id.* at 1-2.)

## II.   STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). "The party moving for summary judgment has the burden of showing that there is no genuine issue of material fact, and once the moving party has sustained this burden, the opposing party must introduce specific evidence showing that there is a genuine issue for trial." *Williams v. Borough of West Chester*, 891 F.2d 458, 464 (3d Cir. 1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In reviewing the record, "a court must view

the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *Anderson*, 477 U.S. at 255.

## III.   DISCUSSION

Cardinal Health moves for summary judgment on two grounds. First, Cardinal Health argues that the claims against it should be dismissed because its indirect subsidiary, RGH, is the entity that distributed Plaintiff's rollator. Upon consideration of this argument, the Court concludes there is a question of fact whether Cardinal Health, in addition to RGH, can be found liable for Plaintiff's injuries and will not grant summary judgment on this basis.

Cardinal Health and RGH also move for summary judgment on the merits of Plaintiff's claims. In opposition, Plaintiff relies heavily on the opinions of her proposed expert witness Jonathan Z. Schuch. The motion for summary judgment does not challenge the admissibility of these opinions, but Cardinal Health filed a motion *in limine* to exclude certain of Schuch's opinions. Because of the existence of potential factual disputes concerning Schuch's opinions, the Court denies the motion *in limine* without prejudice. Assuming the admissibility of Schuch's expert testimony, the Court concludes that Zuzel can proceed with her design defect and breach of implied warranty of merchantability claims but grants summary judgment to Defendants on the failure to warn and implied warranty of fitness for a particular purpose.

### A.  Motion *in Limine*

After filing its motion for summary judgment, Cardinal Health separately filed a motion *in limine* to exclude certain opinions of Plaintiff's expert Jonathan Z. Schuch pursuant to Federal Rules of Evidence 702-704 and 403. (Cardinal Health's Mem. in Supp. of Mot. in Limine to

Exclude Certain Opinions of Jonathan Z. Schuch [Mot. in Limine].) Ordinarily, when the Court is presented with a full factual record, an *in limine* hearing is not required to determine the admissibility of proposed expert testimony. *Oddi v. Ford Motor Co.*, 234 F.3d 136, 153-55 (3d Cir. 2000). However, if factual questions remain regarding an expert's testimony, a district court should conduct a hearing prior to ruling on the admissibility of such testimony. *Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 418 (3d Cir. 1999).

Here, the motion *in limine* relies on factual disputes concerning causation. Specifically, Defendants argue that Plaintiff's First Amended Complaint and interrogatory responses indicate the rollator frame fractured or broke, whereas Schuch offers opinions about the rollator's defective folding mechanism. (Mot. in Limine at 2-3.) As a result, Cardinal Health argues Schuch's opinions concerning the rollator's unintentional collapse do not fit the facts of the case and will mislead the jury. In addition, Cardinal Health argues that Schuch's opinions on causation suffer from "a leap in logic from the existence of an alleged defect to specific causation" and as a result are not supported by a reliable methodology. (*Id.* at 6-7.) Essentially, Defendants argue that there is no explanation for Schuch's determination that defects caused Plaintiff's fall.

Cardinal Health's motion *in limine* relies exclusively on alleged deficiencies in Schuch's expert report, but there is no indication that Cardinal Health deposed Schuch. Defendants also do not offer their own expert opinion, so Schuch did not have any need or opportunity to address Defendants' criticisms or present a rebuttal report. Without a more complete record, factual questions remain concerning the reliability of Schuch's methodology and the fit of certain of his opinions to the facts of the case. Thus, the Court declines to rule on the admissibility of Schuch's proposed testimony without a more complete record to support Schuch's opinions and Cardinal

Health's criticisms. As a result, the Court will deny the motion *in limine* without prejudice to renew with the addition of Schuch's deposition testimony.

### B.  Cardinal Health and RGH's Parent-Subsidiary Relationship

Cardinal Health argues that it is entitled to summary judgment because RGH distributed Plaintiff's rollator, with no involvement from Cardinal Health. (Defs.' Mot. at 6; Defs.' Mem. in Supp. of its Mot. to Strike or in the Alternative, in Reply in Supp. of Summ. J. [Defs.' Reply] at 5.) In support of this argument, Cardinal Health offers the affidavit of Warren Lockhart, who states he is a Global Sourcing Manager/Category Manager at RGH. (Defs.' Ex. A ¶ 2.) Lockhart states Cardinal Health acquired RGH's parent company, AssuraMed, Inc., and its subsidiaries in 2013, so RGH is an indirect subsidiary of Cardinal Health. (*Id.* ¶ 4.) Lockhart affirms that RGH is a distinct legal entity from Cardinal Health and continues to operate independently from Cardinal Health, as it did before its acquisition. (*Id.* ¶ 17.) Specifically, he states that RGH has its own employees, accounting, customer service, and sales teams, uses its own computer systems which are separate and different than Cardinal Health's, and does its own sourcing for products, including Plaintiff's rollator. (*Id.*)

Lockhart is familiar with Plaintiff's rollator model and states that RGH contracted with the manufacturer Aikin Holding Corp. ("Aikin") to distribute the rollator. (*Id.* ¶¶ 5, 9.) The contract Lockhart references is the Private Label Agreement, which is attached as an exhibit to Cardinal Health's motion for leave to file the Third-Party Complaint. (Document No. 42-1, Ex. B.) The Private Label Agreement is between "RGH Enterprises, Inc. ('RGH')" and "Aikin Holding Corp. ('Supplier')" and provides that the "Supplier . . . grants to RGH . . . the right to market, distribute and sell" various "Products" including Plaintiff's rollator. (*Id.* at ¶ 1.1 & 1, 28.)

Lockhart further avers that Cardinal Health did not distribute the rollator and was not involved in RGH's business relationship with Aikin. (Defs.' Ex. A ¶ 14.) In opposition, Plaintiff points to the Supplier Quality Agreement, which is an addendum to the Private Label Agreement between RGH and Aikin and references various rights and obligations of "Cardinal Health." (Pl.'s Ex. D; Document No. 42-1, Ex. B at 22-27.) Pursuant to the Supplier Quality Agreement, the "Supplier" must, among other things: "notify Cardinal Health" of any changes to its licenses, permits, and registrations (Pl.'s Ex. D ¶ 2b); "comply with Cardinal Health's reasonable requests for documents and information" (*id.* ¶ 2g); make production records available to "Cardinal Health" (*id.* ¶ 3d); investigate each complaint it receives from "Cardinal Health" and notify "Cardinal Health" of the investigation results (*id.* ¶ 4a); "provide Cardinal Health with any response it receives from" Government Authorities regarding complaints or adverse events reports (*id.* ¶ 4b); and "notify Cardinal Health" of any product complaint or manufacturing problem and consult with "Cardinal Health" before issuing a recall, subject to certain exceptions. (*Id.* ¶ 4d.) "Cardinal Health" may, among other things: report adverse events or recall information concerning the products to Government Authorities in certain instances (*id.* ¶¶ 4c-d); request that records pertaining to Corrective Action and Preventive Action be made available (*id.* ¶ 5b); request that documents related to the products be destroyed at the end of the document retention period (*id.* ¶ 6b); and audit Supplier's facilities. (*Id.* ¶ 7a.) The Supplier also may not make changes that impact the quality or regulatory status of the products without prior written consent from "Cardinal Health." (*Id.* ¶ 8a.)

"Cardinal Health" is not a defined term in the Supplier Quality Agreement. Therefore, Cardinal Health argues, it is not clear whether this language refers to the legal entity Cardinal Health, Inc. or "something else, like the Cardinal brand as distributed by RGH Enterprises, Inc."

(Defs.' Reply at 8.) Cardinal Health also argues that it is "not clear whether this is intentional language or a scrivener's error." (*Id.*)

Plaintiff further argues that there is a genuine dispute of fact that Defendants' affiant Warren Lockhart was an employee of Cardinal Health, rather than RGH. (*See* Pl.'s Mem. of Law in Opp'n Def. Cardinal Health's Mot. for Summ. J. [Pl.'s Opp'n] at 7-8.) First, Plaintiff points to interrogatory responses verified by Lockhart which state that he is Global Sourcing Manager/Category Manager at Cardinal Health. (*See* Document No. 42-1 at Ex. D at 14.) Plaintiff also presents Lockhart's LinkedIn profile stating that he is an employee of Cardinal Health. (Pl.'s Ex. E.) In response, Defendants present a rebuttal affidavit from Lockhart reaffirming that he is employed by RGH, not Cardinal Health, and explaining that his LinkedIn profile lists Cardinal Health "for ease of reference and for networking purposes because [RGH] is not a readily-recognizable entity." (Defs.' Ex. R5 ¶¶ 2-5.) Plaintiff argues that the discrepancy between Lockhart's interrogatory verification and LinkedIn profile, on the one hand, and his affidavit on the other, raises questions concerning his credibility and makes his testimony subject to impeachment. (Pl.'s Opp'n at 7-8.)

The Court agrees that Lockhart's previous statements indicating his affiliation with Cardinal Health raise questions about the credibility of his assertion that RGH and Cardinal Health operated separately, including with their own employees. Moreover, the Supplier Quality Agreement—which is part of the contract between RGH and Aikin for distribution of Plaintiff's rollator and contains numerous references to Cardinal Health—raises a dispute of fact concerning Cardinal Health's involvement in RGH's business relationship with Aikin. The various rights and obligations of "Cardinal Health" under the Supplier Quality Agreement pertain specifically to regulatory compliance, including product quality and manufacturing. As a result, the Supplier

Quality Agreement raises a factual dispute as to Cardinal Health's involvement in overseeing the distribution of Plaintiff's rollator. Upon consideration of Plaintiff's evidence, the Court finds it is sufficient to raise a genuine dispute of fact that Cardinal Health and RGH could each be liable as distributors of Plaintiff's rollator and declines to grant summary judgment on these grounds.

### C. Merits of Plaintiff's Claims

Cardinal Health and RGH make several distinct arguments to dismiss Plaintiff's claims against them. First, Defendants argue that they cannot be held liable for Plaintiff's injuries because "all of the conduct that Plaintiff claims caused her injury is attributable to Aikin." (Defs.' Mot. at 9.) Next, Defendants argue that Plaintiff's three claims for defective design, failure to warn, and breach of implied warranty must each fail on their respective merits. (*Id.* at 14-23.) The Court will consider each of these arguments in turn.

#### 1. Seller Liability

Cardinal Health and RGH argue they cannot be held liable for Plaintiff's products liability claims because "Aikin is the true 'seller' liable to Plaintiff." (*Id.* at 10.) Cardinal Health and RGH assert that RGH "received the rollators only after they were designed, tested, manufactured, and packaged by Aikin." (*Id.* at 13.) As a result, RGH and Cardinal Health argue that they cannot be held liable for Plaintiff's claims because they cannot be considered a "seller" under Pennsylvania law.[1] (*Id.* at 12.) The Court disagrees.

---

[1] In their filings concerning Plaintiff's claims, both sides have cited to Pennsylvania law. (Def.'s Mot. at 14 n.6; Pl.'s Opp'n at 8, 10.) "[A] federal district court adjudicating a state law issue must apply the law of the forum state, including that state's choice-of-law rules." *Sys. Operations, Inc. v. Sci. Games Dev. Corp.*, 555 F.2d 1131, 1136 (3d Cir. 1977). Pennsylvania's conflict of law rule for tort claims requires courts to conduct a flexible "analysis of the policies and interests underlying the particular issue before the court." *Troxel v. A.I. duPont Inst.*, 636 A.2d 1179, 1181 (Pa. 1994) (quoting *Griffith v. United Air Lines, Inc.*, 203 A.2d 796, 802 (Pa. 1964)). Plaintiff's injury occurred in Pennsylvania, she is a Pennsylvania resident, and there is no suggestion that any

"Under [Pennsylvania] products liability law, all suppliers of a defective product in the chain of distribution, whether retailers, partmakers, assemblers, owners, sellers, lessors, or any other relevant category, are potentially liable to the ultimate user injured by the defect." *Burch v. Sears, Roebuck & Co.*, 467 A.2d 615, 621 (Pa. Super. Ct. 1983). Pennsylvania follows the Restatement (Second) of Torts § 402A, which states that "[o]ne who sells any product in a defective condition unreasonably dangerous" to a consumer, and "is engaged in the business of selling such a product," is liable for the harm the product causes to a consumer, so long as the product reaches a consumer "without substantial change in the condition in which it is sold." *Webb v. Zern*, 220 A.2d 853, 854 (Pa. 1966) (quoting Restatement (Second) of Torts § 402A (1965)); *see also Tincher v. Omega Flex, Inc*., 104 A.3d 328, 399 (Pa. 2014) (declining to adopt the Third Restatement articulation of strict liability). Comment F to Restatement (Second) of Torts § 402A provides that the section "applies to any person engaged in the business of selling products for use or consumption," which includes "any wholesale or retail dealer or distributor." "Section 402A reflects the social policy that a seller or manufacturer is best able to shoulder the costs and to administer the risks involved when a product is released into the stream of commerce." *Davis v. Berwind Corp*., 690 A.2d 186, 189-90 (Pa. 1997).

Despite this broad scope of strict products liability, RGH and Cardinal Health argue that they cannot be liable for Plaintiff's claims because they are not sellers under Pennsylvania law. Defendants primarily rely on *Musser v. Vilsmeier Auction Co*., 562 A.2d 279, 283 (Pa. 1989), in which the Supreme Court of Pennsylvania held that an auctioneer was not a seller within the meaning of § 402A. The court analyzed four factors to determine whether to extend the definition

---

state besides Pennsylvania has an interest in her claims. Therefore, the Court will apply Pennsylvania law.

of a "seller" to an auctioneer: (1) whether the auctioneer "may be the only member of the marketing chain available to the injured plaintiff for redress;" (2) whether imposition of strict liability "serves as an incentive to safety;" (3) whether the auctioneer is "in a better position than the consumer to prevent the circulation of defective products;" and (4) whether the auctioneer "can distribute the cost of compensating for injuries resulting from defects by charging for it in his business, *i.e.*, by adjustment of the rental terms." *Musser*, 562 A.2d. at 282. The *Musser* court reasoned that: (1) at auction, there was always another seller, who was usually served by the auctioneer as his agent; (2) strict liability for an auctioneer would not promote safer products because the auctioneer was not involved in design or manufacturing of the products; (3) the auctioneer would not be in any better position than a consumer to prevent circulation of defective products because the auctioneer had no ongoing relationship with the manufacturer; and (4) even though the auctioneer could impose indemnity agreements on the seller, this was not sufficiently connected to the policy considerations underlying Restatement § 402A to warrant extending seller liability to an auctioneer. *Id.* at 282-83.

RGH and Cardinal argue that upon consideration of these factors, they similarly cannot be sellers. But this argument ignores the obvious differences between Defendants and an auctioneer, including in application of the *Musser* factors. Most importantly, and in consideration of the third *Musser* factor, Defendants would be in a better position than a consumer to prevent circulation of defective products because they had an ongoing business relationship with the manufacturer Aikin. Defendants disavow any responsibility for the rollator's design and manufacturing based on the terms of the Private Label Agreement, which assigned these responsibilities to Aikin. But the mere existence of this contract with Aikin meant that Defendants had the ability to negotiate terms which could potentially impact the product's design and manufacture, such as purchase price or Aikin's

minimum insurance policy limits. Had Plaintiff sued eBay—the auctioneer from which she purchased the product—eBay might argue that *Musser* controls its liability on Plaintiff's claims, but for RGH and Cardinal, this case is inapposite. Defendants' status as the product distributor is not comparable to an auctioneer and they plainly fall within the scope of Pennsylvania's strict liability framework for all suppliers of a defective product in the chain of distribution. Therefore, the Court rejects Defendants' motion on these grounds.

### 2.  Design Defect

Cardinal Health and RGH argue that Plaintiff cannot sustain a claim for strict products liability on a theory of design defect because (1) she fails to present any evidence that a design defect caused her injury and (2) her voluntary assumption of the risk, misuse of the product, or highly reckless conduct caused her injury. (Defs.' Mot. at 14-16, 18-19.) Upon consideration of these arguments, the Court concludes that a reasonable juror could find that a design defect was the cause of Plaintiff's injury and that her conduct did not constitute voluntary assumption of the risk, misuse of the product, or highly reckless conduct. Therefore, the Court will deny summary judgment on this claim.

### a.  Causation

Under Restatement § 402A, strict products liability requires proof that "(1) the product is defective, (2) the defect existed when it left the defendant's hands, and (3) the defect caused the plaintiff's injury." *Hadar v. AVCO Corp.*, 886 A.2d 225, 228 (Pa. Super. Ct. 2005). A plaintiff "may prove defective condition by showing either that (1) the danger is unknowable and unacceptable to the average or ordinary consumer" (the consumer expectations test) or (2) "a reasonable person would conclude that the probability and seriousness of harm caused by the product outweigh the burden or costs of taking precautions" (the risk-utility test). *Tincher*, 104

A.3d at 335 (Pa. 2014). Defendants do not argue that Plaintiff's strict liability claim must fail because the rollator was not defective under either the consumer expectations or risk-utility test. Here, Defendants argue that they must be awarded summary judgment because Plaintiff cannot prove that the alleged defects caused her injuries. "A plaintiff proceeding under Section 402A . . . bears the burden of establishing factual causation." *Summers v. Giant Food Stores, Inc.*, 743 A.2d 498, 508 (Pa. Super. Ct. 1999) (describing the distinction between "[c]ause in fact or 'but for' causation" and "[l]egal or proximate causation"). "[W]hether a party has met the burden to prove the elements of the strict liability cause of action are issues for the finder of fact," except where it is clear that reasonable minds cannot differ. *Tincher*, 104 A.3d at 407.

Plaintiff's expert Jonathon Z. Schuch opines that Plaintiff's rollator contained two distinct design defects. First, he states that according to international standards, "rollators used in outdoor environments must have front wheels with a diameter that is greater than 7 inches (180 mm)." (Schuch Rep. ¶ 4.) Per the product specifications, Plaintiff's rollator had front wheels of 6-inch diameter. (*Id.* at 5.) As a result, Schuch opines that "the incident rollator is defectively designed for outdoor use. This is due to the fact that the front wheels are less than 7 inches (180 mm) in diameter." (*Id.* ¶ 6.) Second, also according to international standards, he opines that "rollators are not supposed to unintentionally fold or collapse when in the use or working position. Rather, the folding mechanism must stay securely locked to prevent unintentional folding of the rollator." (*Id.* ¶ 3.) Thus, Schuch opines that Plaintiff's rollator is "defectively designed in that it can unintentionally collapse while in the working or use position." (*Id.* ¶ 6.) As for causation, Schuch opines that:

> As a result of . . . the design defects in the Cardinal Health rollator, and the lack of warnings, Ms. Zuzel attempted to exit a middle car on the SEPTA Broad Street Line at the Cecil B. Moore Station while using her rollator. The front wheels of the rollator fell into the gap between the subway car and the station platform and

became entrapped. The rollator collapsed as Ms. Zuzel was attempting to dislodge the front wheels from the gap, causing Ms. Zuzel to fall and fracture her right patella.

(*Id.* ¶ 11.) Schuch's report also states, "[i]n addition to the technical and scientific citations provided above, safer alternative designs for locks or latches on rollators and other devices to prevent their unintentional folding or collapse will be used as exhibits to support my opinions. In addition, rollators with larger front wheels will be cited." (*Id.* at 26.)

Defendants argue that Plaintiff cannot prove a design defect was the proximate cause of her injury because Plaintiff has presented no evidence of the size of the gap between the Broad Street Line platform and the train, and no expert opinion that if the rollator wheels were larger in diameter, the wheels would not have become lodged in the gap. (Defs.' Mot. at 15-16.) However, even if there were insufficient evidence to conclude that the rollator's wheel diameter caused the rollator to get stuck in the gap, Schuch has also offered the opinion that, once the wheels were stuck, a design defect in the rollator's folding mechanism caused the rollator's unintentional collapse. Defendants do not make any arguments concerning Schuch's opinion as to the folding mechanism's design defect. Nor do Defendants suggest any alternative cause of the rollator's collapse that Schuch has failed to rule out. Zuzel testified that when she tried to dislodge the wheels of her rollator from the gap by "shaking it," it "collapsed" underneath her, causing her to fall and fracture her kneecap. (Pl.'s Zuzel Tr. 59:3-12.) Taking this evidence in the light most favorable to Plaintiff, Schuch's proposed testimony can support a conclusion that, assuming the existence of a defective condition in the folding mechanism, such a defect caused the rollator's collapse, and therefore caused Plaintiff's injuries.

### b. Assumption of Risk, Misuse, or Highly Reckless Conduct

Defendants also argue that the design defect claim must fail because Plaintiff's actions severed any causal link between an alleged design defect and Plaintiff's injuries. (Defs.' Mot. at 18-19.) Ordinarily, evidence of a plaintiff's actions or contributory negligence is inadmissible in a strict liability action, but "[e]vidence of a plaintiff's voluntary assumption of the risk, misuse of a product, or highly reckless conduct is admissible to the extent that it relates to the issue of causation." *Gaudio v. Ford Motor Co.*, 976 A.2d 524, 540-41 (Pa. Super. Ct. 2009). To establish voluntary assumption of the risk, a defendant must show that the plaintiff "knew of a defect and yet voluntarily and unreasonably proceeded to use the product." *Id.* at 541. "Assumption of risk involves the meeting of a subjectively known risk; whereas, contributory negligence may involve a plaintiff exposing himself to a danger of which he was subjectively unaware but which would have been apparent had he used due care." *Childers v. Power Line Equip. Rentals, Inc*., 681 A.2d 201, 208 (Pa. Super. Ct. 1996) (quoting *Robinson v. B.F. Goodrich Tire Co.*, 664 A.2d 616, 618 (Pa. 1995)). To establish misuse of the product, the defendant must show that the use was "unforeseeable or outrageous." *Id.* "Highly reckless conduct is akin to evidence of misuse and requires the defendant to prove that the use was so extraordinary and unforeseeable as to constitute a superseding cause." *Reott v. Asia Trend, Inc*., 55 A.3d 1088, 1096 (Pa. 2012) (quoting *Gaudio v. Ford Motor Co.*, 976 A.2d 524, 541 (Pa. Super. Ct. 2009)). Each of these three concepts "require a defendant to prove that a plaintiff acted in a manner illustrating the plaintiff's conscious understanding of the risks involved either in (1) merely using the product or (2) using the product in an unanticipated and dangerous manner." *Id.* at 1097 (footnote omitted).

Defendants argue that because Plaintiff did not pick up her rollator to cross the gap between the platform and the train, despite knowing the risk that the wheels could get stuck, "she assumed

the risk, misused the product, and/or acted in a highly reckless manner and caused her own injuries." (Defs.' Mot. at 19.) Defendants have not shown that Plaintiff's conduct met any of these standards. Plaintiff testified that when exiting the subway, if the platform was higher than the train, she would pick up the rollator to exit the train because if she did not, "it might get stuck." (Defs.' Zuzel Tr. 153:10-17.) This testimony demonstrates that Plaintiff was subjectively aware of a possibility that the wheels of her rollator could get stuck in the gap between the platform and train in certain circumstances. However, this testimony does not demonstrate any subjective knowledge that if her rollator became stuck, it could collapse when she attempted to dislodge it. Therefore, Defendants present no evidence Zuzel knew of a risk of physical harm because of the rollator becoming stuck in the platform gap or consciously disregarded that risk. Nor have Defendants shown that Plaintiff's decision to roll the rollator over the platform gap in this instance constitutes unforeseeable or outrageous conduct. *Cf. Childers*, 681 A.2d at 209 (among other conduct, failure to apply parking brakes and parking orientation were contributory negligence, but did not constitute misuse or highly reckless conduct). Because Defendants have not shown Plaintiff's conduct rose beyond ordinary contributory negligence, summary judgment is denied on this basis.

### 3. *Failure to Warn*

Defendants argue they should be awarded summary judgment on Plaintiff's failure to warn theory of strict products liability because she has no evidence that inadequate warnings caused her injuries.[2] (Defs.' Mot. at 16-18.) The Court agrees with Defendants that no reasonable juror could conclude that insufficient warnings were the proximate cause of Plaintiff's injury.

---

[2] In the alternative, Defendants argue that this claim should fail because there is no duty to warn of obvious dangers. (Defs.' Mot. at 19-21.) The Court need not reach this argument since it concludes that Plaintiff cannot prove lack of warning caused her injuries.

Under Restatement § 402A, "an otherwise properly designed product may still be unreasonably dangerous (and therefore 'defective') for strict liability purposes" if the manufacturer has distributed the product without adequate warnings of latent dangers in the product. *Pavlik v. Lane Ltd./Tobacco Exporters Int'l*, 135 F.3d 876, 881 (3d Cir. 1998) (citing *Davis v. Berwind Corp.*, 690 A.2d 186, 190 (Pa. 1997)). A plaintiff proceeding on a failure to warn theory must establish that the hazardous condition of the defect was the cause in fact of plaintiff's injury and that the absence or inadequacy of warnings was the proximate cause of the injury. *Id.*; *Conti v. Ford Motor Co.*, 743 F.2d 195, 197 (3d Cir. 1984) (applying Pennsylvania law); *Moroney v. Gen. Motors Corp.*, 850 A.2d 629, 633-34 (Pa. Super. Ct. 2004). In most failure to warn cases, a plaintiff is not entitled to a presumption that she would heed any additional warnings that were provided. *Moroney*, 850 A.2d at 634 n.3 (heeding presumption has been applied only in limited circumstances of workplace asbestos exposure); *Viguers v. Philip Morris USA, Inc.*, 837 A.2d 534, 538 (Pa. Super. Ct. 2003) (same). Thus, "the evidence must be such as to support a reasonable inference, rather than a guess, that the existence of an adequate warning may have prevented the accident before the issue of causation may be submitted to the jury." *Conti*, 743 F.2d at 198. However, where the record reflects that a plaintiff was fully aware of the risk posed by the product, this will disprove any inference that adequate warnings might have prevented the injury and defeat a failure to warn strict liability claim. *See Overpeck v. Chi. Pneumatic Tool Co.*, 823 F.2d 751, 756 (3d Cir. 1987) (applying Pennsylvania law); *Conti*, 743 F.2d at 198-99; *Moroney*, 850 A.2d at 634; *Sherk v. Daisy-Heddon, a Div. of Victor Comptometer Corp.*, 450 A.2d 615, 618 (Pa. 1982).

Plaintiff argues that her rollator was defective for outdoor use because its wheel diameter was less than seven inches and Cardinal Health failed to issue adequate warnings about this latent defect. (Schuch Rep. ¶¶ 6-7.) Schuch's report states that the documentation provided with

Plaintiff's "rollator is devoid of meaningful instructions for use and warnings pertaining to outdoor use, use across uneven terrain (including vertical changes in height), and use across gaps found in built environments." (*Id.* ¶ 7.) Schuch further opines that Plaintiff attempted to exit the subway using her rollator because of Cardinal Health's lack of adequate warnings, which led to her rollator getting stuck in the gap between the subway platform and train and collapsing. (*See id.* ¶ 11.)

Zuzel's claim fails because she was aware that her rollator wheels could become stuck between the platform and train. Plaintiff testified that when she boarded a subway car, she would sometimes lift the rollator up, "[d]epending on whether the car was lined up with the platform." (Defs.' Zuzel Tr. 55:15-22.) Zuzel clarified that this testimony was meant to distinguish between boarding a subway car and boarding a bus, on which she always had to pick up the rollator to board. (*See id.* 55:23-56:24.) She testified further that on the day of the Broad Street Line incident she would not have picked up the rollator to cross the gap "unless the platform was higher than the bottom of the car" and she believed she had "rolled it into [the gap] because the platform was not higher than the car." (*Id.* 170:8-18, 171:11-172:1.) Finally, Plaintiff testified that the reason she would not wheel the rollator into the gap if the platform was higher than the level of the train was because "it might get stuck." (*Id.* 153:10-17.) While Plaintiff seems to have believed that she only needed to lift the rollator to exit a train car if the platform was higher than the train, she was fully aware that her rollator's wheels could get stuck between the platform and the train in certain instances if she did not lift the rollator to cross the gap. This testimony demonstrates Plaintiff's awareness of the potential harm that resulted from the alleged failure to warn. As a result, there is no genuine dispute of material fact that an additional warning about the rollator's wheel diameter and the dangers of outdoor use might have prevented this incident. The Court finds that a

reasonable juror could not conclude that lack of warnings caused Plaintiff's injury and, therefore, will grant summary judgment on this claim.

### 4. Breach of Implied Warranty

There are two forms of implied warranty in Pennsylvania: warranty of merchantability and warranty of fitness for a particular purpose. Defendants argue that Plaintiff cannot sustain a claim under either theory. (Defs.' Mot. at 21-24.) While the Court agrees that Plaintiff cannot prove a breach of warranty of fitness for a particular purpose, there is a genuine dispute of fact sufficient to sustain Plaintiff's claim for breach of warranty of merchantability.

The warranty of fitness for a particular purpose requires that the seller had reason to know of the buyer's particular purpose at the time of contracting and that the buyer was relying on the seller's judgment to furnish a suitable product. 13 Pa. Cons. Stat. Ann. § 2315. In such circumstances, the goods are implicitly warranted to be fit for the buyer's particular purpose. Cardinal Health first argues that Plaintiff must be proceeding on a theory of implied warranty of fitness for a particular purpose because "her allegations involve only the fitness of the rollator for a very particular purpose—ambulating in, onto, and around areas of public accommodation such as subways and rail lines and, even more particularly, negotiating the gap between rail cars and platforms." (Defs.' Mot. at 21 n.9.) Cardinal Health argues that it is entitled to summary judgment on the warranty of fitness for a particular purpose because Plaintiff cannot establish that Cardinal Health or RGH knew of Plaintiff's purpose to use the rollator on the subway, and that she did not rely on anyone's judgment in selecting the rollator to purchase. (*Id.* at 23 n.11.) To the extent that Plaintiff asserts a breach of warranty of fitness for a particular purpose, the Court agrees that she cannot sustain this claim. Zuzel testified that she did not tell anyone at Cardinal Health or RGH that she intended to use the rollator on public transportation. (Defs.' Zuzel Tr. 182:4-14.) She

further testified that she selected the rollator to purchase based on price, and she did not talk to anyone about what rollator to purchase or do any research about whether the rollator was intended for use on the subway before purchasing it. (*See id.* 129:2-17, 131:11-134:17.) There is no evidence Defendants knew or should have known of Zuzel's particular intent to use the rollator on the subway or that Zuzel was relying on their expertise.

However, Plaintiff has also indicated an intent to proceed on a claim of breach of the implied warranty of merchantability. (*See* Pl.'s Opp'n at 10.)  In order to be merchantable, goods must be "fit for the ordinary purposes for which such goods are used." 13 Pa. Cons. Stat. Ann. § 2314(b)(3). "The word 'ordinary' is readily understood to mean 'common' or 'average.'" *Phillips v. Cricket Lighters*, 883 A.2d 439, 444 (Pa. 2005). Thus, in analyzing liability for breaches of the warranty of merchantability, "[t]he concept of merchantability does not require that the goods be the best quality or the best obtainable but it does require that they have an inherent soundness which makes them suitable for the purpose for which they are designed." *Id.* (quoting *Gall by Gall v. Allegheny Cty. Health Dep't*, 555 A.2d 786, 789-90 (Pa. 1989) (alteration in original)). To establish a breach of either warranty, a plaintiff must show that the product was defective. *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992).

Defendants argue that the rollator was fit for its ordinary purpose, which Warren Lockhart affirms is "walking or balancing on relatively flat, solid surfaces where all four wheels can be in contact with the ground." (Defs.' Ex. A ¶ 7.) Defendants further argue that "[t]here is no evidence that the 'ordinary' purpose of the rollator was to navigate off public transport where there is a space between the subway and platform, or to roll over or span large gaps anywhere, including as between the car and platform." (Defs.' Mot. at 24.)

Defendants have not met their burden to show that there is no genuine dispute of material fact on this point. Plaintiff's expert offered opinions that using a rollator on public transportation is an ordinary purpose, so Zuzel was using the product as intended or reasonably expected by the manufacturer. (*See* Schuch Rep. ¶¶ 1-2.) Specifically, he states that "[a]mbulation in one's community while using a rollator, which may include accessing public transportation services, is a foreseeable, if not intended, use of a rollator." (*Id*. ¶ 2.) Zuzel's testimony describing her fall creates a reasonable inference that the product was defective or malfunctioned when it collapsed as she tried to dislodge it from the gap between the platform and train, and Schuch opined that there were defects in the rollator's folding mechanism. (*Id*. ¶ 6.) Moreover, Defendants have raised no alternative causes to explain the rollator's collapse. Accepting this testimony, a reasonable jury could find in favor of Plaintiff on her claim of breach of implied warranty of merchantability, and therefore, summary judgment is denied on this claim.

## IV. CONCLUSION

For the reasons discussed above, the Court will grant in part and deny in part Cardinal Health and RGH's Motion for Summary Judgment and will deny without prejudice Cardinal Health and RGH's Motion *in Limine.* An Order consistent with this Memorandum will be docketed separately.