## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BELLA ZUZEL,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **CARDINAL HEALTH, INC., and** | : | **No. 19-268** |
| **RGH ENTERPRISES, INC.,** | : | |
| **Defendants.** | : | |
| | | |
| **CARDINAL HEALTH, INC., and** | : | |
| **RGH ENTERPRISES, INC.,** | : | |
| **Third-Party Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **AIKIN HOLDING CORP.,** | : | |
| **Third-Party Defendant.** | : | |

### MEMORANDUM

**Schiller, J.**                                                          **October 5, 2021**

Bella Zuzel was injured when her Cardinal Health rollator collapsed underneath her. She sued Cardinal Health, Inc. ("Cardinal Health" or "Cardinal") and its indirect subsidiary, RGH Enterprises, Inc. ("RGH") for strict product liability and breach of implied warranty. Cardinal Health and RGH subsequently filed a Third-Party Complaint against the manufacturer of the rollator, Aikin Holding Corp. ("Aikin"), for breach of contract, declaratory judgment, and common law indemnity, or in the alternative, contribution. Now before the Court are Cardinal Health and RGH's and Aikin's respective motions for summary judgment on the Third-Party Complaint. For the reasons set forth below, Cardinal Health's Motion for Summary Judgment is denied, RGH's Motion for Summary Judgment is granted in part and denied in part, and Aikin's Motion for

Summary Judgment is granted in part and denied in part. Aikin's Motion to Strike is also denied as moot.

## I.     FACTUAL BACKGROUND

Bella Zuzel has disabilities that limit her ability to walk without the use of a wheeled mobility device known as a rollator. On November 25, 2016, Zuzel was injured while exiting a Broad Street Line subway car using her Cardinal Health rollator, model number ZCHMT25BG.

### A.  The Agreement to Manufacture and Distribute Plaintiff's Rollator

Third-Party Plaintiffs Cardinal Health and RGH assert that RGH entered into a contract with Aikin to distribute the rollator Zuzel was using when she fell in November 2016. (Cardinal Ex. A.) The Private Label Agreement (the "Agreement") is between "RGH Enterprises, Inc. ('RGH')" and "Aikin Holding Corp. ('Supplier')" and provides that the "Supplier . . . grants to RGH . . . the right to market, distribute and sell" various "Products." (*Id.* ¶ 1.1 & at 1.) The "Products" governed by the Agreement include Plaintiff's rollator. (Cardinal Ex. B [Lockhart Aff.] ¶ 4; *see* Cardinal Ex. A at 28.) The Products were to be packaged with Cardinal Health branded artwork supplied by RGH. (Cardinal Ex. A ¶ 2.5.)

According to the Agreement, RGH would submit orders for the Products "on a standard purchase order form," the terms and conditions of which were incorporated into the Agreement as Exhibit A. (*Id.* ¶ 2.8.) The Purchase Order Terms and Conditions set forth the terms and conditions for orders between RGH and Aikin. (*Id.* at 13-20.) However, the Agreement also explicitly stated that "[i]n the event of a conflict between any terms of this Agreement and the purchase order, the terms of this Agreement shall control." (*Id.* ¶ 2.8.)

The Agreement included an indemnification provision which states, in relevant part:

Supplier and RGH recognize that a potential for liability exists in connection with RGH's agreement to distribute the Products designated herein, and Supplier agrees

to accept all risks associated with any and all losses and liabilities arising from RGH's agreement to distribute the Products designated herein. To the fullest extent permitted by law, Supplier hereby expressly agrees to indemnify, hold harmless and at RGH's request, defend RGH, its officers, directors, employees, and affiliates from and against any damage (including punitive damages), loss, penalty, fine, liability, claim or expense (including, without limitation, reasonable expenses of investigation and reasonable attorneys' fees) arising out of . . . (iv) any claims, including, but not limited to, those alleging any theory of strict liability, negligence, fraud, breach of warranty, or violation of consumer protection/unfair competition laws for bodily injury, death, property damage, unjust enrichment, out-of-pocket damages, or other damages arising out of the design, manufacture, testing, performance, marketing, labeling, possession, distribution, sale or use of the Products . . . .   In all cases in which Supplier is obligated to indemnify and defend RGH, RGH agrees that it will cooperate fully with supplier [sic] in its defense of all such actions, including, but not limited to, making available for Supplier review all related records and files and providing pertinent and necessary witnesses, if requested to do so.

(*Id.* ¶ 6.1.) The Agreement also included a section entitled "Notification of Products Claims" which states:

If RGH receives a written claim for which RGH may seek indemnification under Section 6.1, such party shall promptly and in any case within one hundred twenty (120) days thereafter give notice of any possible claim to the other party and shall cooperate with the other party in the defense of all such claims. No settlement or compromise entered into without its prior consent shall be binding upon a party hereto or used in any way as evidence by a party hereto against the other party.

(*Id.* ¶ 6.2.) Aikin was required to obtain insurance "covering claims and liabilities arising under the Agreement" with limits of not less than $1,000,000 per occurrence and $10,000,000 aggregate. (*Id.* ¶ 6.4.) The Agreement states that it "shall be governed by the laws of the State of Ohio applicable to contracts made and to be performed in that State." (*Id.* ¶ 13.)

Pursuant to the Agreement, Aikin was "solely responsible for the design, licensure and manufacture of all Products." (*Id.* ¶ 2.3.) The Agreement cannot be "assigned by either party (by operation of law or otherwise) without the other's prior written consent . . . except . . . to any entity which is owned by, or is under common ownership with, a party to this Agreement, to the extent

of at least fifty percent (50%) of ownership." (*Id.* ¶ 14.) Any assignment in violation of the Agreement would constitute a material breach. (*Id.*)

The Agreement states it is "entered into effective the 21st day of November, 2013 (the 'Effective Date')." (*Id.* at 1.) It "shall be effective as of the Effective Date" and has a one-year initial term, which "shall automatically renew for a term of one (1) year . . . unless either party notifies the other party of its intention not to renew this Agreement at least 60 days prior to the end of the then-current Term." (*Id.* ¶ 8.1.) On June 19, 2018, Cardinal Health sent a letter to Aikin stating that it did not intend to renew "the Supply Agreement dated November 21, 2013 . . . [p]ursuant to Section 8.1." (Cardinal Ex. F.)

### B.  Cardinal Health's Tender Notice to Aikin

Zuzel sued Cardinal Health in the Philadelphia Court of Common Pleas on November 19, 2018. Plaintiff served the Writ of Summons on Cardinal Health by mail on December 3 and filed her Complaint on December 19, 2018. Plaintiff's Complaint did not include the model number of her Cardinal Health rollator. On January 15 and 17, 2019, Cardinal Health emailed Plaintiff to ask for product identification material. (Cardinal Exs. M, N.) Plaintiff served discovery requests on Cardinal Health on March 21, 2019 that included photographs of the rollator showing the partial product serial number. (Cardinal Exs. O, P.) On May 30, 2019, Cardinal Health notified Aikin of Zuzel's claims by letter and sought Aikin's indemnification and defense of Plaintiff's claims pursuant to the Agreement. (Cardinal Ex. Q; *see also* Aikin Opp'n Ex. 1, Decl. of Allen Fan [Fan Decl.] ¶ 21.) After this initial tender letter, Cardinal Health sent additional emails and letters to Aikin regarding the indemnification and defense of Plaintiff's claims in 2019 and 2020. (*See* Cardinal Ex. R.)

### C.  Procedural History

Plaintiff filed an Amended Complaint in May 2019, which asserted claims against Cardinal Health for: (1) strict product liability for failure to warn; (2) strict product liability for defective design and manufacture; and (3) breaches of express and implied warranties. The Court dismissed Zuzel's manufacturing defect and breach of express warranty claims against Cardinal Health for failure to state a claim. In October 2019, following a Rule 16 conference, the Court issued a Scheduling Order, which it revised in April 2020 to close discovery at the end of September 2020.

In October 2020, after discovery closed on Plaintiff's claims, the Court granted Cardinal Health and RGH leave to file a Third-Party Complaint against Aikin, the alleged manufacturer of Zuzel's rollator. The Third-Party Complaint was filed on October 7, 2020 and asserts claims against Aikin for (1) breach of contract, (2) a declaratory judgment that the Agreement's indemnification provisions encompass Plaintiff's claims, and (3) common law indemnity, or in the alternative, contribution. Aikin filed a motion to dismiss and a motion to strike or sever the Third-Party Complaint. The Court denied these motions and issued a scheduling order permitting discovery on the third-party claims on February 2, 2021. Cardinal Health filed a motion for summary judgment on all claims in the Third-Party Complaint on April 5, 2021. Following a conference with the Court concerning discovery disputes, the Court extended Aikin's time to complete discovery and oppose Cardinal Health's motion. In July 2021, Aikin opposed Cardinal Health's motion for summary judgment and filed a motion for summary judgment on the Third-Party Complaint.

Cardinal Health filed a motion for summary judgment on Plaintiff's claims in December 2020. While that motion was pending, the Court granted Plaintiff leave to amend her Complaint to add RGH as a Defendant. Plaintiff filed the Second Amended Complaint on July 26, 2021. On

August 9, 2021, RGH filed an answer to the Second Amended Complaint and joined Cardinal Health's pending motions by consent stipulation with Plaintiff.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). "The party moving for summary judgment has the burden of showing that there is no genuine issue of material fact, and once the moving party has sustained this burden, the opposing party must introduce specific evidence showing that there is a genuine issue for trial." *Williams v. Borough of West Chester*, 891 F.2d 458, 464 (3d Cir. 1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *Anderson*, 477 U.S. at 255.

## III.   DISCUSSION

Cardinal Health, RGH, and Aikin each move for summary judgment on all three counts in the Third-Party Complaint: (1) breach of contract/contractual indemnification; (2) declaratory judgment; and (3) common law indemnity, or in the alternative, contribution. Upon consideration of these claims, the Court concludes that RGH, but not Cardinal Health, is entitled to summary judgment on its claim for breach of contract for the duty to defend and for a declaratory judgment.

Summary judgment is denied to RGH for common law indemnification. Cardinal Health's motion for summary judgment is denied for the breach of contract and declaratory judgment claims and its motion for summary judgment for common law indemnification is denied without prejudice because it is premature. Aikin's motion for summary judgment is granted with respect to the breach of contract claim for the duty to indemnify and obtain insurance. Aikin's motion is also granted as to Cardinal Health only for the breach of contract for the duty to defend and the declaratory judgment claim. Finally, Aikin's motion is granted as to RGH for common law indemnification. Aikin's motion is otherwise denied.

Aikin also moves to strike portions of Third-Party Plaintiffs' affidavit offered in support of their motion for summary judgment. Because the Court does not rely upon any of the contested portions of this affidavit in ruling on the motion, the Court will deny the motion to strike as moot.

### A. Breach of Contract

Cardinal Health and RGH and Aikin each move for summary judgment on the breach of contract claim. Cardinal Health and RGH argue that RGH had a contract with Aikin that required Aikin to indemnify and defend RGH in Plaintiff's action. They also assert that Aikin failed to secure sufficient insurance coverage. Aikin makes several arguments in opposition. First, Aikin argues that it never formed a valid contract with RGH. Second, and in the alternative, Aikin argues that it did not receive timely notice of Zuzel's suit, as the contract requires, so it is not required to defend or indemnify. Next, Aikin argues that the duty to indemnify is not ripe because it is distinct from the duty to defend. Finally, Aikin argues that it cannot be held liable for the actions of Aikin Healthcare, Ltd. ("Aikin Healthcare"), which is a separate corporate entity that manufactured the rollator.

### 1. *Choice of Law*

The parties agree that, pursuant to ¶ 13 of the Agreement, Ohio law applies to the contractual indemnification claim. (Mem. in Supp. of Mot. for Summ. J. on Third-Party Claims by Cardinal Health, Inc. and RGH Enterprises, Inc. [Cardinal Mot.] at 10-11; Third-Party Def. Aikin Holding Corp.'s Resp. to Cardinal Health, Inc. and RGH Enterprises, Inc.'s Mot. for Summ. J. [Aikin Opp'n] at 27; Third-Party Def. Aikin Holding Corp.'s Mem. of Law in Supp. of Summ. J. [Aikin Mot.] at 4.) The Court agrees and will therefore apply Ohio law to the breach of contract claim.[1]

### 2. *Formation of an Enforceable Contract*

Cardinal Health and RGH argue that the Agreement between RGH and Aikin is enforceable because it was signed by both parties, and even if it were not, it is nonetheless valid because the parties performed under the contract. RGH presents two different signature pages for the Agreement. (Cardinal Health Statement of Undisputed Material Facts in Supp. of Mot. for Summary J. [Cardinal SUMF] ¶¶ 9-10.) First, RGH presents a signature page that is electronically

---

[1] The contract also includes a forum selection clause, which states "[t]he Parties hereto consent to the exercise of personal jurisdiction by the U.S. District Court for the Northern District of Ohio or the Common Pleas Court of Summit County, Ohio, and agree that any lawsuit arising from or in any manner connected to the interpretation or enforcement of this Agreement shall only be prosecuted in one of those Courts." (Cardinal Ex. A ¶ 13.) Aikin's motion to dismiss did not raise any arguments concerning improper venue or lack of personal jurisdiction and Aikin did not file a motion to transfer venue pursuant to 28 U.S.C. § 1404(a). Aikin's motion for summary judgment includes only a single sentence that addresses the forum selection issue, which states: "[t]he Court should exercise its discretion and dismiss this action, or transfer it to the U.S. District Court for the Northern District of Ohio or the Common Pleas Court of Summit County, Ohio, as the parties agreed." (Aikin Mot. at 11; *see also* Aikin Opp'n at 36.) However, Aikin has not made any legal arguments on the basis of *forum non conveniens* or filed a motion to transfer venue, which is the appropriate means of enforcing a forum selection clause. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 59 (2013). Aikin has waived this issue and consented to adjudication before this Court by filing a motion for summary judgment rather than a motion to transfer venue.

signed by Allen Fan of Aikin on December 2, 2013. (Cardinal Ex. C ¶ 6a, Ex. 3.) This signature page is not countersigned by RGH. RGH presents a second signature page with a signature of Allen Fan of Aikin dated May 5, 2014, and a signature of Steven Briggs of RGH dated March 29, 2016. (*Id.* ¶ 6d, Exs. 6-7.) RGH also presents an affidavit of Warren Lockhart, a Portfolio Sourcing Manager for RGH, who testifies that between 2013 and 2018, RGH submitted purchase orders to Aikin, Aikin shipped products to RGH, and RGH paid Aikin. (Lockhart Aff. ¶ 8.)

Aikin argues that a genuine dispute of material fact exists as to the formation of the Agreement. (Aikin Opp'n at 28-29.) Aikin's President, Allen Fan, states that he signed the agreement on May 5, 2014, but he never received a countersigned copy of the Agreement from RGH. (Fan Decl. ¶¶ 2-3.) In addition, Fan affirms that Aikin received purchase orders for rollators and payment from RGH, and Aikin was then responsible for placing orders with Aikin Healthcare, Ltd. (*Id.* ¶¶ 10-11.) Aikin states that these purchase orders included terms and conditions noting that "[b]y accepting and processing this PO, the Supplier agrees to the Purchase Order Terms and Conditions that can be found at [RGH website]." (*See* Aikin Ex. 1D.) As a result, Aikin argues that it was performing under the terms and conditions of the Purchase Orders rather than the Agreement. (Aikin Opp'n at 29; Aikin Mot. at 5.)

Aikin further states that "the partially torn serial number" on Plaintiff's rollator, which reads "15AH00," demonstrates that the device was manufactured in 2015. (Aikin Opp'n at 29; Aikin Mot. at 5 (citing Cardinal Ex. O (image of Plaintiff's rollator)).) Since RGH did not countersign the agreement until 2016, Aikin argues the parties must have been performing pursuant to the Purchase Orders rather than the Agreement. (Aikin Opp'n at 29; Aikin Mot. at 5.) Aikin submits no testimony or evidence supporting its interpretation that a serial number "15AH00" indicates a 2015 manufacturing date, so the Court will not credit this argument.

However, Plaintiff has stated throughout this litigation that she purchased her rollator in 2015. (*See, e.g.*, Cardinal Ex. L.) Therefore, there is no genuine dispute of material fact that her rollator was manufactured before RGH countersigned the Agreement in March 2016. Even so, this will not necessarily prevent RGH from enforcing the Agreement.

Under Ohio law, "in order to declare the existence of a contract, both parties to the contract must consent to its terms [ ]; there must be a meeting of the minds of both parties [ ]; and the contract must be definite and certain." *Episcopal Ret. Homes, Inc. v. Ohio Dep't of Indus. Rels.*, 575 N.E.2d 134, 137 (Ohio 1991) (internal citations omitted). For the sale of goods, a contract "may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." Ohio Rev. Code Ann. § 1302.07(A). Under § 1302.07(A), "conduct sufficient to show agreement, including performance, is a reasonable mode of acceptance." *Am. Bronze Corp. v. Streamway Prod.*, 456 N.E.2d 1295, 1300 (Ohio Ct. App. 1982).

If a written contract exists but is unsigned, the key question is the parties' intent to manifest assent. *Gerling & Assocs., Inc. v. Odulair, LLC*, Civ. A. No. 16-1000, 2017 WL 2790669, at *7 (S.D. Ohio June 28, 2017). "Signature spaces in the form contract do not in and of themselves require that the signatures of the parties are a condition precedent to the agreement's enforceability." *Richard A. Berjian, D.O., Inc. v. Ohio Bell Tel. Co.*, 375 N.E.2d 410, 413 (Ohio 1978). However, "courts will give effect to the manifest intent of the parties where there is clear evidence demonstrating that the parties did not intend to be bound by the terms of an agreement until formalized in a written document and signed by both." *Id.*; *accord Allen v. Ford Motor Co.*, 8 F. Supp. 2d 702, 705 (N.D. Ohio 1998), *aff'd*, 188 F.3d 506 (6th Cir. 1999); *see also Hamilton Foundry & Mach. Co. v. Int'l Molders & Foundry Workers Union*, 193 F.2d 209, 213-14 (6th Cir.

1951) (unexecuted written instrument can create valid contract, except if parties agree contract will not be binding unless signed by both parties). Thus, an unexecuted contract is enforceable absent evidence that the parties only intended to be bound upon signing it. *Beck Aluminum Int'l, LLC v. Aluar Aluminio Argentino S.A.I.C.*, Civ. A. No. 09-2978, 2010 WL 3260017, at *6-7 (N.D. Ohio Aug. 18, 2010); *Berjian*, 375 N.E.2d at 413-14; *cf. Bailey v. Midwestern Enters., Inc.*, 658 N.E.2d 1120, 1123 (Ohio Ct. App. 1995) (no contract formation where unsigned agreement stated it was not binding until accepted).

Here, RGH has presented contract pages signed by Aikin in 2013 and 2014. Although RGH did not countersign either of these versions of the Agreement, this does not mean that a valid contract was not formed. By its terms, the Agreement's Effective Date was November 21, 2013, and the Agreement states it "shall be effective as of the Effective Date." (Cardinal Ex. A at 1, ¶ 8.1.) The Agreement does not state that it was not valid until signed, that the Effective Date was the date of signature by all parties, or that it was only effective upon Aikin's receipt of a countersigned agreement from RGH. Aikin has also not presented evidence demonstrating that the parties only intended to be bound by the Agreement once it was signed by both parties. Finally, RGH seeks to enforce the agreement against Aikin, which does not dispute that it signed the Agreement.

Moreover, the parties performed pursuant to the terms of the Agreement, which is another indication of their mutual consent to the Agreement. Between 2013 and 2018, RGH submitted purchase orders to Aikin, Aikin shipped products to RGH, and RGH paid Aikin. (Lockhart Aff. ¶ 8; Fan Decl. ¶¶ 10-11.) Although Aikin argues that it was performing pursuant to the terms and conditions of individual purchase orders, these terms were explicitly incorporated into the Agreement as Exhibit A. (Cardinal Ex. A at 13-20.) And if the Purchase Order terms conflicted

with the Agreement, the Agreement's terms controlled. (*Id.* ¶ 2.8.) Even though RGH did not countersign the Agreement until 2016, Aikin has failed to raise any genuine dispute that it intended to be bound by the Agreement with RGH for the manufacturing and distribution of Plaintiff's rollator.

### 3. Duties to Defend and Indemnify

Cardinal Health and RGH argue that the Agreement's indemnification provision covers Plaintiff's claims, thereby triggering Aikin's duties to defend and indemnify them. (Cardinal Mot. at 11-13.) In response, Aikin argues that any contractual duty to indemnify is premature because the duty does not arise unless and until Cardinal Health and RGH are found liable for Plaintiff's injuries. (Aikin Opp'n at 30; Aikin Mot. at 11.) Aikin further argues that the Court should deny summary judgment to Third-Party Plaintiffs with respect to breach of contract for the duty to defend because Cardinal's delay in notifying Aikin of the underlying action creates a question of material fact regarding when that duty arose. (Aikin Opp'n at 31.)

The duty to defend and the duty to indemnify are "separate and distinct" obligations. *W. Lyman Case & Co. v. Nat'l City Corp.*, 667 N.E.2d 978, 979 (Ohio 1996). The duty to indemnify is only triggered upon a finding of "actual legal liability." *GuideOne Mut. Ins. Co. v. Reno*, Civ. A. No. 01-68, 2002 WL 857682, at \*2 (Ohio Ct. App. Apr. 26, 2002). Because Third-Party Plaintiffs' liability depends on the underlying lawsuit in this matter and has not yet been determined, Aikin has not breached its duty to indemnify the Third-Party Plaintiffs. *See Medpace, Inc. v. Darwin Select Ins. Co.*, 13 F. Supp. 3d 839, 847 (S.D. Ohio 2014) (finding no duty to indemnify because the underlying claim "has not been fully adjudicated"); *see also AMCO Ins. Co. v. Lauren-Spencer, Inc.*, 500 F. Supp. 2d 721, 726 (S.D. Ohio 2007) (distinguishing between

the two duties and noting the duty to indemnify will arise if plaintiff prevails in the underlying lawsuit).

By contrast, the duty to defend "is much broader than the duty of indemnification." *AMCO Ins.*, 500 F. Supp. 2d at 725 (quoting *Pilkington N. Am., Inc. v. Travelers Cas. & Sur. Co.*, 861 N.E.2d 121, 127 (Ohio 2006)). Unlike the duty to indemnify, it does not require a finding of ultimate liability. *Id.* Rather, the duty to defend triggers upon a "demand that the insurer provide a defense to a claim of alleged liability." *GuideOne Mut. Ins. Co.*, 2002 WL 857682, at *2.

Aikin does not dispute that the Agreement obligates it to defend RGH. Nor could it, as the Agreement plainly states that the "Supplier hereby expressly agrees to indemnify, hold harmless and at RGH's request, *defend RGH*, its officers, directors, employees, and affiliates . . . against any damage . . . or expense (including, without limitation, reasonable expenses of investigation and reasonable attorneys' fees) arising out of . . . (iv) any claims, including . . . strict liability, . . . breach of warranty." (Cardinal Ex. A ¶ 6.1 (emphasis added).)

On May 30, 2019, Cardinal Health sent a letter to Aikin "request[ing] that Aiken [*sic*] defend, indemnify, and hold Cardinal Health harmless from the claims asserted and the damages sought by Bella Zuzel." (Cardinal Ex. Q at 2.) Because of the timing of this notice, Aikin argues that there is "a genuine issue of material fact about *when* Aikin Holding's duty to defend arose, and if it arose at all." (Aikin Opp'n at 31.) Aikin states that "[a]t the earliest" its duty to defend could have arisen after May 30, 2019, or it could have been "sometime after Aikin Holding conducted a reasonable investigation, or not at all." (*Id.*) Aikin does not develop this argument further or take a precise position about when its duty to defend Cardinal Health and RGH arose, irrespective of the notice issue presented in the next section, *infra*. However, there is no dispute

that Cardinal Health's May 30, 2019 letter requested that Aikin defend Cardinal Health in Plaintiff's action.

The more difficult question here—which no party has addressed in their respective motions for summary judgment—is whether Cardinal Health can assert a breach of contract claim against Aikin. There is no indication in the record that Cardinal Health was a party to the Agreement between Aikin and RGH. Under Ohio law, only intended third-party beneficiaries may enforce contracts to which they are not a party. *See Cook v. Ohio Nat'l Life Ins. Co.*, 961 F.3d 850, 855 (6th Cir. 2020).

Although RGH's Corporate Disclosure Statement affirms that it is an indirect subsidiary of Cardinal Health, and Section 6.1 of the Agreement obligates Aikin to defend RGH's "affiliates," neither RGH nor Cardinal Health have argued that Cardinal Health is an intended third-party beneficiary to the Agreement. A third party is an "intended beneficiary" with "enforceable rights" under a contract if the promisee "intends that [the] third party should benefit from the contract." *Norfolk & W. Co. v. United States*, 641 F.2d 1201, 1208 (6th Cir. 1980). By contrast, if a promisee does not intend "to benefit a third party, then any third-party beneficiary to the contract is merely an 'incidental beneficiary'" with no enforceable rights under the contract. *Id.*; *see also Hill v. Sonitrol of Sw. Ohio, Inc.*, 521 N.E.2d 780, 786 (Ohio 1988). "Generally, the parties' intention to benefit a third party will be found in the language of the agreement." *Huff v. FirstEnergy Corp.*, 957 N.E.2d 3, 7 (Ohio 2011). A third party is not an intended beneficiary simply because it receives an incidental benefit under the contract. *See TRINOVA Corp. v. Pilkington Bros., P.L.C.*, 638 N.2d 572, 577 (Ohio 1994), *amended by* 640 N.E.2d 1144. Rather, "there must be evidence that the contract was intended to directly benefit that third party." *Huff*, 957 N.E.2d at 7. Accordingly,

Cardinal Health may only enforce the Agreement against Aikin if it is an intended beneficiary of the contract.

The Court finds that Cardinal Health is not an intended beneficiary of the Agreement. The Agreement established a business relationship between RGH and Aikin. *See Lucio v. Edward C. Levy Co.*, Civ. A. No. 15-613, 2017 WL 1928058, at *6 (N.D. Ohio May 10, 2017). Although Cardinal Health may receive incidental benefits of the Agreement as an "affiliate" of RGH, nothing in the record suggests the Agreement was intended to directly benefit Cardinal Health. *See Huff*, 957 N.E.2d at 7; *see also Cook*, 961 F.3d at 855-58 (third party was mere incidental beneficiary where it did not directly transact with promisor, separate agreement governed relationship between third party and promisee, and references to third party in contract were "intended for [promisee's] protection, not the [third party's] benefit"). Accordingly, Cardinal Health cannot recover for its breach of contract claims and the Court grants Aikin's summary judgment motions against Cardinal Health with respect to those claims. However, RGH can still seek to enforce the Agreement against Aikin for breach of the contractual duty to defend itself and Cardinal Health, as an affiliate of RGH.

### 4. *Timely Notice of Claims*

In addition to the duties to defend and indemnify in ¶ 6.1, the Agreement also includes a separate paragraph entitled "Notification of Products Claims" which states,

> If RGH receives a written claim for which RGH may seek indemnification under Section 6.1, such party shall promptly and in any case within one hundred twenty (120) days thereafter give notice of any possible claim to the other party and shall cooperate with the other party in the defense of all such claims. No settlement or compromise entered into without its prior consent shall be binding upon a party hereto or used in any way as evidence by a party hereto against the other party.

(Cardinal Ex. A ¶ 6.2.)

The parties dispute whether Cardinal Health timely notified Aikin of Plaintiff's claims. Aikin argues that its duties to defend and indemnify did not arise because Cardinal Health did not notify it of Plaintiff's claims within 120 days of her filing of the Complaint. (Aikin Opp'n at 36-41; Aikin Mot. at 6-10.) RGH argues that it provided timely notice because it notified Aikin within 120 days of learning identifying information about Plaintiff's rollator. (Cardinal Mot. at 15-17; Reply in Supp. of Mot. for Summ. J. on Third-Party Claims by Cardinal Health [Cardinal Reply] at 7-11.)

Plaintiff filed her Complaint on December 19, 2018, but the Complaint did not include the Cardinal Health rollator model number. Cardinal Health did not know Aikin manufactured Plaintiff's rollator until Plaintiff served discovery requests on Cardinal Health on March 21, 2019 that included photographs of the rollator showing the partial product serial number. (Cardinal Exs. O, P.) Cardinal Health notified Aikin of Zuzel's claims by letter on May 30, 2019—which was more than 120 days after it learned of Plaintiff's case but less than 120 days after it learned of Plaintiff's rollator product information.

Aikin argues that Cardinal Health's receipt of Plaintiff's Complaint in December 2018 was "a written claim for which RGH may seek indemnification," and therefore RGH cannot enforce its contractual duty to defend and indemnify because it did not provide timely notice of the claim as required by ¶ 6.2. (Aikin Opp'n at 37; Aikin Mot. at 7-9.) RGH argues that Plaintiff's claims did not become "a written claim for which RGH may seek indemnification" until RGH received identifying information about Plaintiff's rollator that allowed it to identify Aikin as the manufacturer in March 2019. As a result, RGH argues it provided timely notice as required by ¶ 6.2. (Cardinal Mot. at 15-17.) In the alternative, RGH argues that even if it provided notice more than 120 days after learning of Plaintiff's claim, this should not preclude enforcing the contractual

16

duties to defend and indemnify because the contract's terms do not state that notice within 120

days is a prerequisite to obtaining defense or indemnity, and Aikin suffered no prejudice from

receiving Cardinal's notice 42 days late. (*Id.* at 17-18.)

A Court of Appeals of Ohio has summarized the law of Ohio contract interpretation as

follows:

> In the construction of a written contract, it will be read as a whole, and the intent of
> each part will be gathered from a consideration of the whole. The language and
> terms of the contract are to be given their plain, common, and ordinary meanings.
> But if the language is ambiguous, then a court must construe the language against
> the party who prepared the contract. Language is ambiguous if it is reasonably
> susceptible of two or more constructions.

*McClorey v. Hamilton Cty. Bd. of Elections*, 720 N.E.2d 954, 956-57 (Ohio Ct. App. 1998).

Applying these concepts, the Court concludes that the meaning of the phrase "a written claim for

which RGH may seek indemnification" is susceptible to multiple interpretations. It is possible to

interpret the phrase to require RGH's actual knowledge of the right to indemnify, constructive

knowledge of this right, or no knowledge of the right at all. RGH could have added more explicit

language to the Agreement to protect itself from a scenario such as this, where it received a written

claim for which it was initially unaware it could seek defense and indemnification, but later learned

additional details confirming it could do so. As a result, the Court concludes that the meaning of

this phrase as written is ambiguous. *See Cent. Realty Co. v. Clutter*, 406 N.E.2d 515, 517 (Ohio

1980).

However, the Agreement's notice requirement is not a condition precedent to the duties to

defend or indemnify. "A condition precedent is a condition that must be performed before the

obligations in the contract become effective." *M3 Producing, Inc. v. Tuggle*, 91 N.E.3d 805, 809

(Ohio Ct. App. 2017). A condition precedent "requires that an act 'must take place before a duty

of performance of a promise arises. If the condition is not fulfilled, the parties are excused from

17

performing.'" *Id.* (quoting *Kern v. Clear Creek Oil Co.*, 778 N.E.2d 115, 119 (Ohio Ct. App. 2002)). "Whether a provision of a contract is a condition precedent is a question of the parties' intent. Intent is ascertained by considering not only the language of the particular provision but also the language of the entire agreement and its subject matter." *Id.* Like any other contract, "[t]he nature of an indemnity relationship is determined by the intent of the parties as expressed by the language used." *Worth v. Aetna Cas. & Sur. Co.*, 513 N.E.2d 253, 256 (Ohio 1987).

Here, the Court concludes that the terms of the Agreement do not indicate any intent that notice of a claim within 120 days is a condition precedent to the duty to defend or indemnify. The provisions for "Indemnification by Supplier" (¶ 6.1) and "Notification of Product Claims" (¶ 6.2) are distinct paragraphs within Section 6 of the contract. Under ¶ 6.2, "[i]f RGH receives a written claim for which RGH may seek indemnification under Section 6.1," RGH "shall promptly and in any case within one hundred twenty (120) days" provide notice to Aikin and "shall cooperate with [Aikin] in the defense of all such claims." But there is no indication that this requirement is a condition precedent to the contractual duties to defend and indemnify in ¶ 6.1. The duty to defend set forth in ¶ 6.1 is triggered by RGH's request for defense in an action, which does not have to occur within a specified time period. (Cardinal Ex. A ¶ 6.1 ("Supplier hereby expressly agrees to indemnify, hold harmless and *at RGH's request*, defend RGH . . . .") (emphasis added).) And unlike ¶ 6.2—which contains an internal reference to "indemnification under Section 6.1"—¶ 6.1 does not contain any similar reference to notice of claims in ¶ 6.2. Contractual indemnification provisions can explicitly premise the right to defense or indemnification on timely notice as a condition precedent. *See, e.g.*, *Action Grp. Int'l, LLC v. AboutGolf, Ltd.*, Civ. A. No. 10-2132, 2011 WL 1627943, at *7-8 (N.D. Ohio Apr. 29, 2011) ("[AboutGolf] agrees to protect [AGI] and hold [AGI] harmless from any loss or claim arising out of warranty-related defects in Products that

18

exist at the time of delivery, *provided that* [AGI] gives [AboutGolf] immediate notice of any such loss or claim and cooperates fully in the handling thereof." (alterations in original).) If RGH and Aikin had intended that the duties to defend and indemnify were contingent upon the notice requirements in ¶ 6.2, the Agreement could easily have made notice an explicit condition precedent. But the parties did not do so, and the Agreement contains no other conditional language linking the duties to defend and indemnify to timely notice of claims.

The other provisions of ¶ 6.1 confirm the Court's conclusion that the Agreement does not indicate any intent that the Notice of Claims provision is a condition precedent to the duties to defend and indemnify. The indemnification provision begins with a statement of intent that "Supplier agrees to accept all risks associated with any and all losses and liabilities arising from RGH's agreement to distribute the Products designated herein." (Cardinal Ex. A ¶ 6.1.) It continues with an acknowledgement that "[t]o the fullest extent permitted by law, Supplier hereby expressly agrees to indemnify, hold harmless and at RGH's request, defend RGH." (*Id.*) This language does not indicate any intent to cabin the contractual obligations to defend and indemnify to instances in which notice is provided to Aikin within 120 days of receipt of a claim.

Finally, the 120-day requirement for Notice of Claims does not contain any express statement that failure to adhere to this requirement is a "material breach," whereas another provision of the Agreement concerning assignment contains an explicit statement that failure to adhere to that section constitutes "a material breach." (*Compare id.* ¶ 6.2, *with id.* ¶ 14.) Generally, "[a] breach of a portion of the terms of a contract does not discharge the obligations of the parties to the contract, unless performance of those terms is essential to the purpose of the agreement," meaning that the breach is material. *Software Clearing House, Inc. v. Intrak, Inc*., 583 N.E.2d 1056, 1060 (Ohio Ct. App. 1990). Failure to designate a violation of the Notification of Products

Claims provision (¶ 6.2) as a "material breach" further signifies the parties' intent that untimely notice under this provision would not necessarily discharge Aikin of its obligations to defend or indemnify.

RGH's notification of claims forty-two days late further indicates that RGH's breach for failure to provide Aikin timely notice of Plaintiff's claim was also not material. Under Ohio law, courts apply five factors to assess the materiality of a breach: "[1] the extent to which the injured party will be deprived of the expected benefit, [2] the extent to which the injured party can be adequately compensated for the lost benefit, [3] the extent to which the breaching party will suffer a forfeiture, [4] the likelihood that the breaching party will cure its breach under the circumstances, and [5] the extent to which the breaching party has acted with good faith and dealt fairly with the injured party." *Id.* (citing *Kersh v. Montgomery Developmental Ctr., Ohio Dep't of Mental Retardation & Developmental Disabilities*, 519 N.E.2d 665, 668 (1987) (quoting Restatement (Second) of Contracts § 241 (1981))). The purpose of the Agreement's Notification of Claims provision is to provide Aikin adequate opportunity to participate in the defense of Plaintiff's claims, even if RGH does not request that Aikin assume the duty to defend. Because RGH notified Aikin of Plaintiff's claims on May 30, 2019—the same month Plaintiff filed her First Amended Complaint and months before the Court had conducted a Rule 16 Conference—Aikin had adequate notice to be able to participate in the defense of Plaintiff's claims and therefore was not deprived of any expected benefit as a result of this late notice. *See Meyer v. Bank of Am., N.A.*, Civ. A. No. 18-218, 2019 WL 6467196, at *15 (S.D. Ohio Dec. 2, 2019) (breaches for failure to provide notice of sales of properties immaterial because they did not result in harm). Moreover, there is no indication Cardinal Health or RGH acted in bad faith or dealt with Aikin unfairly by waiting to provide notice of Plaintiff's claims until May 2019. As Cardinal Health has explained, it did not

have actual knowledge of which rollator related to Plaintiff's claims until March 2019. (Cardinal Mot. at 16-17.)

In sum, the Agreement's 120-day Notification of Products Claims requirement was not a condition precedent to Aikin's duties to defend and indemnify and RGH's provision of notice on May 30, 2019 was not otherwise a material breach of the Agreement. Therefore, the Court will grant summary judgment to RGH on the breach of contractual duty to defend.

### 5.  *Estoppel*

Aikin argues that Cardinal Health and RGH should be estopped from seeking indemnification because they informed Aikin on February 11, 2020 that their earlier delay in providing notice to Aikin was due to an error made during an internal investigation. (Aikin Opp'n at 41-42.) In response, Cardinal Health and RGH argue that estoppel is not warranted because Aikin Holding cannot show it relied on the February 2020 email to its detriment and Cardinal Health and RGH have never conceded that notice was late. (Cardinal Reply at 12.)

"Equitable estoppel prevents relief when one party induces another to believe that certain facts exist and the other party changes his position in reasonable reliance on those facts." *Franklin Twp. v. Meadows*, 720 N.E.2d 1011, 1016 (Ohio Ct. App. 1998) (citing *Chubb v. Ohio Bur. of Workers' Comp.*, 690 N.E.2d 1267, 1269-70 (Ohio 1998)). To establish the defense, Aikin must show that Cardinal Health and RGH made a misleading factual representation which Aikin relied on in good faith and that Aikin was harmed as a result. *See, e.g.*, *Grand Key Condo. Unit Owners Ass'n, Inc. v. Hounshell*, Civ. A No. 13-023, 2014 WL 1348890, at *2 (Ohio Ct. App. Mar. 31, 2014).

Aikin fails to explain how it relied on or changed its position as a result of Cardinal Health and RGH's February 2020 statement. Almost ten months earlier, Cardinal Health and RGH

21

provided notice to Aikin requesting defense and indemnification with respect to Plaintiff's claims. Aikin maintains that their notice was late, regardless of the justification provided. Therefore, Aikin cannot be said to have relied on or changed its position as a result of this statement.

As a result, Cardinal Health and RGH will not be barred from pursuing their claims based on a theory of equitable estoppel.

### 6. *Insurance Coverage*

Cardinal Health and RGH allege that Aikin breached the Agreement because Aikin failed to obtain sufficient insurance coverage, as required by ¶ 6.4 of the Agreement. (Cardinal Mot. at 19-20.) That provision obligates Aikin to "procure and maintain in effect" insurance policies "with limits of not less than $1,000,000 per occurrence and $10,000,000 aggregate" for claims related to "personal injury, or death of any persons and injury to or destruction of property, including loss of use arising therefrom, and also including contractual liability covering [Aikin's] liability under this Agreement." (Cardinal Ex. A ¶ 6.4.) Cardinal Health and RGH explain that Aikin's insurance policy only provided $2,000,000 in aggregate coverage. (Cardinal Mot. at 20.) In response, Aikin states that because the contract was not valid, it was not obligated to obtain insurance coverage, and even if the Agreement were valid, its insurance coverage is irrelevant because Cardinal Health and RGH failed to comply with the notice provisions of the contract. (Aikin Mot. at 6.) Nonetheless, Aikin notes that "Aikin Healthcare Ltd. obtained a Policy of Insurance" and does not dispute that the insurance policy only provided $2,000,000 in coverage. (Aikin's Response to Cardinal SUMF ¶ 12; Aikin Opp'n at 24.) Thus, the parties agree that Aikin failed to discharge its obligation to obtain insurance as required by the contract.

However, it is axiomatic that to prevail on a breach of contract claim, a party must show that a contract exists, it has performed under the contract, the other party failed to perform, and it

suffered damages as a result. *See, e.g., Whitacre v. Nations Lending Corp.*, Civ. A. No. 19-809, 2020 WL 5203503, at *2 (N.D. Ohio Aug. 31, 2020). Cardinal Health and RGH have failed to and cannot show how they have been harmed because Aikin failed to obtain sufficient insurance coverage. Their claim therefore fails. *See id.* at *3 (dismissing breach of contract claim because plaintiff "failed to show any damages, a necessary element to any breach of contract action"); *see also Allen v. Znidarsic Bros., Inc.*, Civ. A. No. 99-088, 2001 WL 20726, at *3 (Ohio Ct. App. Dec. 29, 2000) (affirming dismissal of breach of contract claim where plaintiffs "failed to prove that they suffered any damage[s]").

### 7. *Assignment of Duties to Aikin Healthcare*

Aikin Holding argues it cannot be held responsible for Plaintiff's injuries because Aikin Healthcare—a separate entity affiliated with Aikin Holding—was the true manufacturer of Plaintiff's rollator. (Aikin Opp'n at 34-35; *see also* Fan Decl. ¶ 8.) Cardinal Health and RGH argue this distinction "is immaterial" since Aikin Holding is ultimately responsible for the products provided pursuant to the Agreement. (Cardinal Reply at 14.) Alternatively, because ¶ 14 of the Agreement provides that assignment without notice is a material breach of the contract, Cardinal Health and RGH request the Court's permission to amend their Third-Party Complaint to assert a breach of contract claim against Aikin Holding for violation of the non-assignment provision and to add Aikin Healthcare as an additional Third-Party Defendant. (*Id.* at 16.)

At this time, the Court sees no need for Third-Party Plaintiffs to amend their Complaint or add additional parties. As Cardinal and RGH argue, Aikin Holding ultimately contracted to provide the rollators, made representations and guarantees regarding the warranties of the products, and accepted all other rights and responsibilities rights under the Agreement. (*See generally* Cardinal Ex. A.)

23

### B. Declaratory Judgment

Cardinal Health and RGH also seek a declaratory judgment "that Plaintiff's claims fall within the purview of the indemnification provisions of the Agreement, and that, accordingly, Aikin must defend Cardinal Health in this lawsuit and indemnify it for any and all liability attributable to the claims." (Third-Party Compl. ¶ 51.)

The Declaratory Judgment Act gives this Court discretion, "[i]n a case of actual controversy within its jurisdiction," to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). As noted above, *see supra* at 14-15, Cardinal Health is unable to enforce the contractual duty to defend or the duty to indemnify in its own name because it was not a party to or intended beneficiary of the Agreement. The Court has also already held that Aikin breached the Agreement by failing to defend RGH and Cardinal Health upon written request from RGH, so the Court will only consider RGH's request for a declaratory judgment with respect to Aikin's duty to indemnify.

Under Sixth Circuit precedent, before issuing a declaratory judgment, a court must consider the following five factors:  "(1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for res judicata; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective." *Ceres Enters., LLC v. Travelers Ins. Co.*, Civ. A. No. 20-01925, 2021 WL 110789, at *4 (N.D. Ohio Jan. 12, 2021) (citing *Grand Trunk W. R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984)).

The first two factors favor exercising jurisdiction over RGH's request for a declaratory judgment because doing so "would settle the controversy regarding the scope of insurance coverage issued by" Aikin and clarify the parties' legal relations and obligations. *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003); *see also Ceres Enters.*, 2021 WL 110789, at *5 (similar). Moreover, the first factor favors jurisdiction because there are no parallel state court actions related to this dispute. *Ceres Enters.*, 2021 WL 110789, at *5. There is also no indication in the record that RGH's request for a declaratory judgment was made other than in good faith and issuing a declaratory judgment in this case would have no effect on the relationship between state and federal courts, so the third and fourth factors are not relevant here. *See U.S. Specialty Ins. Co. v Attitude Aviation, Inc.*, Civ. A. No. 11-742, 2012 WL 13034049, at *2 (S.D. Ohio May 29, 2012). Finally, any other alternative resolution would be less efficient and effective given that Plaintiff's underlying claims are already before this Court and the Court's decision to refrain from issuing a declaratory judgment at this stage of the proceedings would require RGH to renew its request later. *Mt. Hawley Ins. Co. v. Packers Sanitation Servs., Inc., Ltd.*, Civ. A. No. 06-2569, 2007 WL 1959216, at *6 (N.D. Ohio June 22, 2007). Accordingly, the Court finds that issuing a declaratory judgment is warranted.

Turning to the text of the relevant contractual provision, the Court finds that RGH is entitled to a declaratory judgment that Plaintiff's underlying claims fall within the indemnification provision of the contract between RGH and Aikin. Aikin agreed, "[t]o the fullest extent permitted by law," to indemnify

> RGH, its officers, directors, employees, and affiliates from and against any damage (including punitive damages), loss, penalty, fine, liability, claim or expense (including, without limitation, reasonable expense of investigation and reasonable attorneys' fees) arising out of . . . (iv) any claims . . . alleging any theory of strict liability, negligence, fraud, breach of warranty, or violation of consumer protection/unfair competition laws for bodily injury, death, property damage, unjust

25

enrichment, out-of-pocket damages, or other damages arising out of the design, manufacture, testing, performance, marketing, labeling, possession, distribution, sale or use of the Products . . . .

(Cardinal Ex. A ¶ 6.1.)

Zuzel's claims relate to her "bodily injury" based on theories of strict liability and breach of warranty and thus plainly fit within the scope of this clause of the Agreement. The Court therefore grants RGH's summary judgment motion with respect to its request for a declaratory judgment that Aikin must indemnify RGH and Cardinal Health (as RGH's "affiliate") in the underlying litigation if they are ultimately found liable for Plaintiff's injuries.

### C.  Common Law Indemnification or Contribution

Cardinal Health and RGH have also asserted common law claims for indemnification or, in the alternative, contribution. Aikin argues that their motion for summary judgment on this claim is premature.

#### 1.  Choice of Law

Choice of law analysis is issue-specific, meaning the law of different states may apply to different issues in the case. *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006). Although Ohio law governs the contractual indemnification claim, the parties agree that Pennsylvania law should govern the common law claims for indemnification, or in the alternative, contribution, because those claims arise outside the scope of the contract. (Cardinal Mot. at 20-21; Aikin Opp'n at 27-28; Aikin Mot. at 11-12.) The Court agrees and will apply Pennsylvania law to Cardinal Health and RGH's common law claims.

#### 2.  Common Law Indemnity Where Contractual Indemnification Exists

A party may not seek common law indemnification where it has entered into an express contract governing indemnity. *Watson v. Allied Tube & Conduit Corp.*, Civ. A. No. 15-1770, 2016

WL 11698042, at *4 (E.D. Pa. Sept. 9, 2016) (citing *Eazor Exp., Inc. v. Barkley*, 272 A.2d 893, 895 (Pa. 1971)). Because the Court has concluded that a contract with indemnity provisions exists between RGH and Aikin, the Court will grant Aikin summary judgment on the common law claim as it pertains to RGH. *See id.* (dismissing claim for common law indemnification because contract between the parties contained a contractual indemnification provision). Cardinal Health's common law claim, however, may proceed.

### 3. *Ripeness*

Aikin argues that the Court should not grant summary judgment in favor of Cardinal Health, and in fact, must grant summary judgment in its favor on Cardinal Health's common law claims because, under Pennsylvania law, a claim for indemnification does not arise until the party seeking indemnity has made payment on the underlying claim. (Aikin Opp'n at 27-28; Aikin Mot. at 11-12.) The Court agrees that Cardinal Health's claims for common law indemnification or contribution are not yet ripe for adjudication at this stage of the proceedings. These claims will only accrue, if at all, once Cardinal Health pays damages to Plaintiff. *See Crew v. Home Depot U.S.A., Inc.*, Civ. A. No. 18-1245, 2020 WL 362721, at *3 (E.D. Pa. Jan. 22, 2020) (finding claims for indemnity and contribution premature where "the jury has yet to find [defendant] liable to" plaintiff); *see also Transp. Ins. Co. v. Spring-Del Assocs.*, 159 F. Supp. 2d 836, 840 (E.D. Pa. 2001) ("Under Pennsylvania law, a claim for indemnification does not fully accrue until payment is made to the injured party."). Accordingly, the Court will deny Cardinal Health's motion without prejudice to its right to seek indemnification following the resolution of Plaintiff's underlying claims. *See TDY Indus., Inc. v. Nat'l Freight Transp., Inc.*, Civ. A. No. 07-984, 2009 WL 691947, at *13 (W.D. Pa. Mar. 12, 2009).

**IV.     CONCLUSION**

For the reasons discussed above, the Court will deny Cardinal Health's Motion for Summary Judgment (without prejudice to renew its request for common law indemnification), grant in part and deny in part RGH's Motion for Summary Judgment, and grant in part and deny in part Aikin's Motion for Summary Judgment. Aikin's Motion to Strike is also denied as moot because the Court did not rely on any of the paragraphs to which Aikin objected in rendering its decision.

An Order consistent with this Memorandum will be docketed separately.